# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVENTOR HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 14-1073-LPS-CJB |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| SUPERCELL, INC., | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S OPENING MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

OF COUNSEL:

Michael J. Sacksteder
Lauren E. Whittemore
Hana K. Andersen
FENWICK & WEST LLP
555 California Street
San Francisco, CA  94104
Tel:  (415) 875-2300

Carolyn C. Chang
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Tel:  (650) 988-8500

Dated:  October 10, 2014
1168697 / 41853

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Supercell, Inc.*

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

II.    SUMMARY OF THE ARGUMENT ............................................................................ 1

III.    STATEMENT OF FACTS ........................................................................................... 3

    A.    The Parties ........................................................................................................ 3

        1.    Inventor Holdings .................................................................................... 3

        2.    Supercell, Inc. ......................................................................................... 3

    B.    The '198 Patent ............................................................................................... 4

        1.    The Specification .................................................................................... 4

        2.    The Claims .............................................................................................. 5

    C.    This Action........................................................................................................ 8

IV.    ARGUMENT .............................................................................................................. 9

    A.    The '198 Patent Claims An Unpatentable Abstract Idea of Providing An Unlock Code To Reveal The Benefit of A Locked Outcome. ........................... 10

        1.    Abstract Ideas Have Long Been, and Continue to Be, Ineligible Subject Matter........................................................................................ 10

        2.    The '198 Patent Is Drawn to an Abstract Idea ....................................... 12

        3.    The '198 Claim Elements Have No "Inventive Concept" Sufficient to "Transform" the Abstract Idea into a Patent-Eligible Application..... 15

    B.    It Is Appropriate to Resolve Questions of Patent Eligibility on a Motion to Dismiss........................................................................................................... 18

V.    CONCLUSION......................................................................................................... 20

# TABLE OF AUTHORITIES

CASES

*Accenture Global Servs. v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)............................................................................13, 14, 16

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ....................................................................................... *passim*

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
  133 S. Ct. 2107 (2013)....................................................................................................1

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*,
  687 F.3d 1266 (Fed. Cir. 2012)................................................................................14, 19

*Bilski v. Kappos*,
  130 S. Ct. 3218 (2010) ....................................................................................... *passim*

*buySAFE, Inc.v. Google, Inc.*,
  No. 2013-1575, 2014 U.S. App. LEXIS 16987 (Fed. Cir. Sept. 3, 2014) ................1, 2, 10, 18

*CyberFone Sys., LLC v. Cellco P'ship*,
  885 F. Supp. 2d 710 (D. Del. 2012)............................................................................19

*DealerTrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012)...........................................................................10, 14, 15, 19

*DietGoal Innovations LLC v. Bravo Media LLC*,
  13 Civ. 8391 (PAE), 2014 U.S. Dist. LEXIS 92484 (S.D.N.Y. July 8, 2014) ......13, 17, 18, 19

*DigiTech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
  2013-1600, 2014 U.S. App. LEXIS 13149 (Fed. Cir. July 11, 2014) ..............................10, 18

*Fort Props., Inc. v. Am. Master Lease LLC*,
  671 F.3d 1317 (Fed. Cir. 2012).............................................................................14

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, et al.,
  C.A. No. 12-1736-LPS-CJB, 2014 U.S. Dist. LEXIS 122780
  (D. Del. Sept. 3, 2014) ............................................................................2, 10, 18

*I/P Engine, Inc. v. AOL Inc.*,
  2014 U.S. App. LEXIS 15667 (Fed. Cir. Aug. 15, 2014)....................................................2, 10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012)...............................................................................1, 11, 17

ii

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................................. 19

*Planet Bingo, LLC v. VKGS, LLC*,
    No. 13-1663, 2014 U.S. App. LEXIS 16412 (Fed. Cir. Aug. 26, 2014) ................................. 13

*Rubber-Tip Pencil Co. v. Howard*,
    87 U.S. 498 (1874) .......................................................................................... 11

*SmartGene, Inc. v. Advanced Biological Labs., SA*,
    555 Fed. Appx. 950 (Fed. Cir. 2014) *cert. denied,* No. 13-1186 (Oct. 6, 2014) .................... 17

*UbiComm, LLC v. Zappos IP, Inc.*,
    C.A. No. 13-1029-RGA, 2013 U.S. Dist. LEXIS 161559 (D. Del. Nov. 13,
    2013) ...................................................................................... 10, 17, 18, 20

*Walker Digital, LLC v. Google, Inc.*,
    C.A. No. 11-00318-LPS, 2014 U.S. Dist. LEXIS 122448 (D. Del. Sept. 03,
    2014) ........................................................................................ 1, 9, 11, 17

## STATUTES

35 U.S.C. § 101 ................................................................................... *passim*

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) ..................................................................... 1, 10, 18, 20

Fed. R. Civ. P. 12(c) ................................................................................ 10, 18

## I.       NATURE AND STAGE OF THE PROCEEDINGS

This is a patent case.  Plaintiff Inventor Holdings , LLC ("Inventor Holdings") alleges

that Supercell, Inc. infringes U.S. Patent No. 8,784,198 ("the '198 Patent"), a patent covering

methods of conducting a promotion by distributing "outcomes" or potential prizes to users and

providing users with a code in exchange for performing a qualifying activity.  The code will

unlock the "outcome" to reveal the reward or prize.  On September 4, 2014, the Court entered a

stipulated order setting October 10, 2014 as the date for Supercell, Inc. to respond to the

complaint.  Supercell, Inc. now moves to dismiss the complaint pursuant to Fed. R. Civ. P.

12(b)(6) on the ground that the '198 Patent claims patent-ineligible subject matter pursuant to 35

U.S.C. § 101.

## II.      SUMMARY OF THE ARGUMENT[1]

1.       Abstract ideas are not eligible for patent protection, and implementing an abstract

idea on a generic computer does not rescue an otherwise ineligible claim.  *Alice Corp. Pty. Ltd.*

*v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) ("We have long held that this provision contains

an important implicit exception:  Laws of nature, natural phenomena, and abstract ideas are not

patentable . . . for more than 150 years. . . .  [M]onopolization of those tools through the grant of

a patent might tend to impede innovation more than it would tend to promote it") (citing *Ass'n*

*for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013); *Bilski v.*

*Kappos*, 130 S. Ct. 3218, 3231 (2010); *Mayo Collaborative Servs. v. Prometheus Labs., Inc*., 132

S. Ct. 1289, 1293 (2012)); *see also buySAFE, Inc.v. Google, Inc.,* No. 2013-1575, 2014 U.S.

App. LEXIS 16987, at *4-5 (Fed. Cir. Sept. 3, 2014)*; Walker Digital, LLC v. Google, Inc.,* C.A.

---

[1] Counsel for Supercell, Inc. (C.A. No. 14-1073-LPS-CJB) is also representing Glu Mobile Inc. (C.A. No. 14-1068-LPS-CJB), ngmoco, LLC (C.A. No. 14-1071-LPS-CJB), and Rovio Animation Company (C.A. No. 14-1072-LPS-CJB).  The legal arguments presented in each brief are the same.

No. 11-00318-LPS, 2014 U.S. Dist. LEXIS 122448, at *9 (D. Del. Sept. 03, 2014).

2.      The '198 Patent claims the economic strategy and abstract idea of providing an "unlock code" in exchange for a qualifying activity for an "outcome" to reveal the benefit of the locked "outcome."  This is no different from entering a drawing or a lottery for a chance to win a prize.  As disclosed in the specification, merchants for years have been offering promotions that give customers a chance to win a prize in order to entice customers to visit a store, try a product, or spend a certain amount in the store.  By accusing Supercell's "Clash of Clans" game, a combat strategy game in which players must build up and defend their villages by performing tasks or making purchases in the game, Inventor Holdings demonstrates that the '198 Patent risks monopolizing all implementations of that abstract idea.

3.      Providing a coupon or game piece (an "unlock code") to reveal the benefit of a prize (a "locked outcome") is a well-understood, routine, and conventional promotional tool.  The only "inventive concept" the '198 Patent purports to add is implementation of this unlock code concept on a generic mobile device, which is precisely the type of disembodied claim to an abstract idea that the Supreme Court has repeatedly found outside the scope of patent eligibility.

4.      Thus, the claims of the '198 Patent are invalid as patent-ineligible, and Inventor Holdings' complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted.

5.      It is appropriate for the Court to resolve a question of subject matter eligibility under § 101 at the motion to dismiss stage.  *buySAFE,* 2014 U.S. App. LEXIS 16987, at *12 (affirming dismissal on the pleadings under § 101); *see also Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings,* et al., C.A. No. 12-1736-LPS-CJB, 2014 U.S. Dist. LEXIS 122780, at *6 n.2 (D. Del. Sept. 3, 2014) (citing *I/P Engine, Inc. v. AOL Inc.,* 2014 U.S. App. LEXIS 15667, at *35-36

(Fed. Cir. Aug. 15, 2014)).

## III.    STATEMENT OF FACTS

### A.    The Parties

#### 1.    Inventor Holdings

Inventor Holdings is a company based in Stamford, Connecticut, and claims to be the owner of the '198 Patent by assignment. [2]  Inventor Holdings filed suit against seven game companies based on this patent in this district.  Inventor Holdings does not allege in its complaint that it makes any product or service, much less one which makes beneficial use of the '198 Patent.

#### 2.    Supercell, Inc.

Supercell Oy ("Supercell"), which is not a party to this lawsuit, [3] is a premier mobile gaming company based in Finland but with a worldwide presence.  Supercell has developed and published "freemium" mobile games, including "Clash of Clans."  Freemium games are available for free, but charge premium for extra functionality (e.g., to advance more quickly in the game).

Inventor Holdings accuses "Clash of Clans" of infringing the '198 Patent.  "Clash of Clans" is a combat strategy game in which players must build up and defend their villages by building a town hall and defensive buildings, training troops, gathering resources and teaming up with other players to form a Clan.  Each player is chieftan of a village and must mine its resources including gold and elixir, in order to grow the village and build defenses and troops.

---

[2] The '198 Patent was initially assigned to Walker Digital, LLC.

[3] By way of filing the present motion, Defendant Supercell, Inc. does not waive any right to challenge its status in this case as a proper Defendant.  Defendant Supercell, Inc. does not design, develop, distribute or provide any product, and therefore its position is that it not a proper party to this lawsuit.  In the event that the Court declines to find that the '198 Patent claims patent-ineligible subject matter and is therefore invalid, Defendant Supercell, Inc. reserves the right to present argument as to its lack of involvement in any aspect of this case.

Players can attack each other's villages in order to pillage the resources and earn points for destroying buildings.  As the player advances through the game, more resources, buildings and troops become available to develop.  Players can also earn gems which can be used to speed the production of resources and to speed the time required to train new troops.  The player can earn gems quickly by making an in-app purchase: using real money to buy gems through the player's iTunes account.   However, players can successfully play the game without making any purchases.

**B.    The '198 Patent**

The '198 Patent issued to its inventors, Jay S. Walker, Geoffrey M. Gelman, James A. Jorasch, Peter Kim, Timothy A. Palmer, Keith Bemer, Andrew P. Golden, and Scott Allison on July 22, 2014, with the title "Method and Apparatus for Conducting or Facilitating a Promotion." The patent discloses a computerized version of a lottery-like promotion where an unlock code is provided to reveal the benefit of a locked outcome.

**1.    The Specification**

The '198 Patent is directed to conducting a promotion "to entice people to try or purchase products, shop or conduct transactions in certain stores, or to make people aware of products, store locations, sales, etc." 1:34-37. The patent purports to solve limitations of print-based promotions – mainly printing costs and the inability to change a rule, benefit, prize, or other aspects of promotion once the promotion has begun – by offering "a merchant or promotion organizer flexibility in the operation of the promotion as well as the ability to change one or more aspects of the promotion during the operation of the promotion." 2:14-17.

The patent focuses on a classic lottery-type promotion where prizes are randomly distributed and a customer or player can win a prize associated with a coupon she received or purchased. Even though the patent claims that the "invention may operate in both lottery and

4

non-lottery type implementations," the only meaningful difference between the two is that the lottery implementation involves a lottery organization; otherwise, they share the same general characteristics of lottery-like promotions.  *See generally* 7:45-8:61.

The crux of the inventions – as outlined in the specification and recited repeatedly in the claims – involves "generating an outcome, generating an unlock code associated with the outcome, providing an indication of the outcome, providing an indication of the unlock code, and providing an indication of a benefit associated with the outcome."  2:44-48.  A controller generates outcomes, and each outcome is either associated with a specific prize (e.g., "a television, ten-thousand dollars, a coupon worth a ten percent discount on a purchase of a future product, a free oil change for a car, etc."), or has a value, symbol or some other identifier associated with it (e.g. "a picture of a cherry or orange, the number '4'").  4:40-47.  The latter option allows merchants more flexibility in conducting promotions; for example, different merchants can provide different prizes for an outcome of "cherry."  4:50-53.  An outcome is initially "locked" so the prize, benefit, or value of the outcome is unknown to the user, and the user needs to obtain an "unlock code," which the controller or an intermediary (e.g., a merchant) provides.  2:48-62.  The user may receive the "unlock code" by performing a "qualifying action."  3:3-6.  When the user unlocks an outcome, the user or user device may provide a redemption request to the controller that "the user be provided with a benefit (e.g., a free dinner at a restaurant, a discount coupon, a car, five hundred dollars, a free lottery ticket, a free outcome, a free unlock code, a cruise, etc.)."  3:15-22.

## 2.    The Claims

The '198 Patent claims recite the classic lottery-like promotion described in the specification carried out by a "mobile device" for a "game on the mobile device."  A generic "mobile device," introduced for the first time in the claims (i.e., the specification does not

5

include the phrase "mobile device"[4]), is not particularized in any way for deploying the claimed

invention.  The '198 Patent contains two independent claims—claims 1 and 18.  Claim 1 is a

system claim and claim 18 is a "Beauregard" claim reciting "[a] non-transitory computer-

readable medium storing instructions" for performing a method .  Both claims are directed to

conducting a lottery-like promotion on a "mobile device" for a "game on the mobile device."

Claim 18, which Inventor Holdings references in its complaint, recites in full:

> A non-transitory computer-readable medium storing instructions for
> directing a processor of a mobile device to perform a method, the
> method comprising:
>
> facilitating play of a game on the mobile device by recognizing inputs
> provided by a user via an input mechanism of the mobile device, at
> least one of the inputs causing progress in the game;
>
> receiving a signal comprising an unlock code;
>
> determining a locked outcome of the game;
>
> unlocking the locked outcome of the game using the unlock code,
> thereby determining an unlocked outcome;
>
> determining an intra-game benefit associated with the unlocked
> outcome; and
>
> providing the intra-game benefit to the user by incorporating the intra-
> game benefit into the game.

Claim 1 recites in full:

> A mobile device operable to facilitate a game playable on the mobile
> device, the mobile device comprising:
>
> an input mechanism for receiving input from a user of the mobile
> device;
>
> a display screen for outputting results of the game;

---

[4] The specification describes receiving and storing outcomes on a "user or customer device, such
as a personal digital assistant, laptop computer, cellular telephone, etc."  4:55-59.

a processor;

a memory, the memory operable to store a first software program for conducting the game on the mobile device and a locked outcome of the game such that, upon the first software program being stored in the memory, the processor is operable with the first software program to: facilitate play of the game by recognizing inputs from the user via the input mechanism;

receive a signal comprising an unlock code;

unlock the locked outcome of the game using the unlock code, thereby determining an unlocked outcome;

determine an intra-game benefit associated with the unlocked outcome; and

incorporate the intra-game benefit into the game while it is being played on the mobile device by the user.

Claim 22, a dependent claim which Inventor Holdings references in its complaint, recites in full:

The non-transitory computer-readable medium of claim 18, wherein receiving the signal comprising the unlock code comprises receiving the signal from a third party via a network via which the mobile device is operable to communicate with the third party.

The dependent claims offer variations on these broad themes of lottery-like promotions, but all recite well-understood, routine, and conventional elements of such promotions. For example, claims 2-6 and 21-25 address the user receiving an unlock code. Claims 7-8 and 26 address receiving payment from a user for the unlock code. Claims 9-10, 16 and 27-29 address the intra-game benefit the user receives. Claim 11 addresses the use of a second program to enable download of the first software program and a decryption algorithm. Claims 12-13 and 30-31 address the qualifying activity. Claims 14-15 and 32-33 address using a GPS locator with the alleged invention and claim 17 addresses the first software program comprising the locked outcome.

Nowhere, however, does the specification or the claims themselves describe or recite a

more particular computer or system for deploying the claimed invention.  At best, the specification refers to a "user device" repeatedly without further explanation.  The claims themselves only include generic computing devices such as "mobile device," "processor," and "memory."  Rather than recite a specific computer or a particular application, the breadth of the claim language attempts to cover all ways of running a lottery-like promotion with coupon or game piece to reveal the prize of a locked outcome.  For example, the specification states that in order to complete a "qualifying action,"

> a user may have to shop at or at least visit a specific merchant, purchase a specific product, use a specific credit card to purchase a product, redeem a specific coupon, participate in a game or group activity, travel to a particular destination by a certain day, notify at least five people of a promotion being conducted by a merchant, hand out leaflets, switch long distance telephone service providers, agree to purchase a magazine subscription, convince at least one other person to download an outcome, attend a particular basketball game, become a museum docent, answer survey questions, apply for a credit card, provide a user identifier, provide a user device identifier, attend a merchant's opening at a new location, commute to work via public transportation as opposed to driving a car, edit or comment on a newspaper article or book, take dancing lessons, graduate from high school diploma or receive high school equivalency degree, try a new shampoo and provide comments on it, try a new restaurant, lose ten pounds, rent a vehicle from a specific automobile rental agency, watch a specific television program, watch a specific television commercial, donate time helping a charity, log on to a specific World Wide Web site, purchase a product on a specific day, send an email to a friend advertising a product or merchant, etc.

6:33-56.

## C.    This Action

Inventor Holdings alleges that Supercell's "Clash of Clans" game, and other similar games, infringe at least claims 18 and 22 of the '198 Patent.  The complaint merely recites the claim language and does not indicate how "Clash of Clans" or any other Supercell games infringe the '198 Patent.  (D.I. 1, Complaint at 4, ¶13.)  Inventor Holdings' allegations stem from

the fact that the '198 Patent claims an abstract idea—a promotion or game offering prizes in exchange for qualifying actions—and lacks an inventive concept sufficient to transform that idea into a patent-eligible application. *Alice*, 134 S. Ct. at 2355-56. The claims are thus not drawn to patentable subject matter.

## IV.   ARGUMENT

The '198 Patent is invalid as a matter of law because it claims nothing more than the abstract idea of providing customers or players a coupon or game piece that contains a prize in exchange for performing an action. It has long been the law that abstract ideas are outside the scope of patentable subject matter, because monopolizing all uses of an abstract idea would stifle, rather than promote, innovation. The Supreme Court has repeatedly and emphatically confirmed this settled principle in the patent law, most recently in its *Alice* decision. *See, Alice,* 134 S. Ct. 2347. The '198 claims are drawn to an economic strategy, a longstanding commercial practice, and implicate an abstract idea for that reason.

In this case, there is no "inventive concept" in the claims that could "transform" this otherwise ineligible abstract idea into an eligible application of the idea. Such claim limitations must be "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355 (brackets in original) (quoting *Mayo*, 132 S. Ct. at 1294). The '198 Patent claims contain no elements of this sort. Instead, the applications of the claimed abstract idea are limitless. The fact that the '198 Patent suggests employing a mobile device to carry out the abstract idea is of no help. As the *Alice* Court held, the mere recitation of an abstract idea carried out by a generic computer is not an inventive concept and does not transform patent *in*eligible subject matter into patent eligible subject matter. *Alice,* 134 S. Ct. at 2358; *see also Walker Digital,* 2014 U.S. Dist. LEXIS 122448, at *21-22 ("Even accepting that the use of a computer increases speed and efficiency of

9

performing the steps of the claims, and improves the likelihood of preserving the anonymity of

the first and second parties, these characteristics do not save the claims.") (citing *Alice*, 134 S.

Ct. at 2358).

Subject matter eligibility is a question of law.  *DealerTrack, Inc. v. Huber*, 674 F.3d

1315, 1333 (Fed. Cir. 2012); *see DigiTech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 2013-

1600, 2014 U.S. App. LEXIS 13149, at *6 (Fed. Cir. July 11, 2014) (reviewing § 101 question

de novo).  If the claims fail to recite patent-eligible subject matter, the court may dismiss a

complaint under Rule 12(b)(6).  *UbiComm, LLC v. Zappos IP, Inc.*, C.A. No. 13-1029-RGA,

2013 U.S. Dist. LEXIS 161559, at *4 (D. Del. Nov. 13, 2013); *Genetic Techs.,* 2014 U.S. Dist.

LEXIS 122780, at *6 n.2, 16 (citing *I/P Engine, Inc. v. AOL Inc.,* 2014 U.S. App. LEXIS 15667,

at *35-36 (Fed. Cir. Aug. 15, 2014) ("there are clear advantages to addressing [S]ection 101's

requirements at the outset of litigation[,]").); *see also buySAFE,* 2014 U.S. App. LEXIS 16987,

at *12 (affirming dismissal under Rule 12(c)).  The Court should dismiss Inventor Holdings'

complaint with prejudice because the '198 Patent claims are directed to patent-ineligible subject

matter.

### A.    The '198 Patent Claims An Unpatentable Abstract Idea of Providing An Unlock Code To Reveal The Benefit of A Locked Outcome.

#### 1.    Abstract Ideas Have Long Been, and Continue to Be, Ineligible Subject Matter.

Section 101 of the Patent Act broadly describes four categories of patent-eligible subject

matter:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101.  The Supreme Court has "long held that this provision contains an important

implicit exception [for] [l]aws of nature, natural phenomena, and abstract ideas."  *Alice*, 134 S.

Ct. at 2354 (citing *Myriad*, 133 S. Ct. at 2116) (internal quotations omitted).  That a patent on an abstract idea is outside the scope of patent eligibility has been in patent law jurisprudence "for more than 150 years."  *Alice*, 134 S. Ct. at 2354 (citing *Bilski*, 130 S. Ct. at 3225; *O'Reilly v. Morse*, 56 U.S. 62, 112–120 (1853); *Le Roy v. Tatham*, 55 U.S. 156, 174-75 (1852)); *see also Rubber-Tip Pencil Co. v. Howard*, 87 U.S. 498, 507 (1874) ("An idea of itself is not patentable . . . .").

The concern animating the abstract idea doctrine is the risk that a patentee might "pre-empt" uses of a basic idea claimed by the patent.  *Alice*, 134 S. Ct. at 2354 ("We have described the concern that drives this exclusionary principle as one of pre-emption"); *Mayo*, 132 S. Ct. at 1293 (preemption would "tend to impede innovation more than it would tend to promote it").  "[T]he inquiry on preemption is not whether patents directed at 'building blocks of human ingenuity' would preempt an **entire** field but, instead, whether such patents 'would risk **disproportionately** tying up the use of the underlying ideas.'"  *Walker Digital,* 2014 U.S. Dist. LEXIS 122448, at *9-10 n.2 (citing *Alice*, 134 S. Ct. at 2354 (citing *Mayo*, 132 S. Ct. at 1294)).  Thus, as the Supreme Court recently clarified, a claim is patent ineligible if it covers an abstract idea without also including an "'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Alice*, 134 S. Ct. at 2357 (citing *Mayo*, 132 S. Ct. at 1294).

The Supreme Court recently articulated that such abstract ideas may include a "fundamental economic practice long prevalent in our system of commerce," a "longstanding commercial practice . . . a method of organizing human activity," even if the claim is not addressed to a "preexisting, fundamental truth" like a mathematical formula or law of nature.  *Alice*, 134 S. Ct. at 2356 (quoting *Bilski*, 130 S. Ct. at 3231, 3234).  If the claim, as a whole,

implicates an abstract idea, it cannot survive § 101 scrutiny unless it contains the inventive concept described above.  In *Alice*, the Supreme Court found that a patent directed to the abstract idea of "intermediated settlement," or "the use of a third party to mitigate settlement risk" was invalid under § 101.  *Alice*, 134 S. Ct. at 2356.  The Court found that intermediated settlement was a "fundamental economic practice long prevalent in our system of commerce . . . a building block of the modern economy." *Id.* (quoting *Bilski*, 130 S. Ct. at 3231).  Searching for an "inventive concept" to save the patent, the Court determined that the claims' application on a "generic computer" (their difference from known prior art methods) did not "transform that abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2356.  The Court stated, in no uncertain terms, that "a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358.

## 2.    The '198 Patent Is Drawn to an Abstract Idea

The claims of the '198 Patent (focusing in particular on the complaint's asserted independent claim 18 as a representative claim) are directed to the abstract idea of providing a coupon or game piece that reveals a reward or prize, or in the language of the patent, an "unlock code" to reveal the benefit of a locked outcome.

The steps in claim 18 are highly generalized—"facilitating  play of a game on the mobile device by recognizing inputs provided by a user via an input mechanism of the mobile device, at least one of the inputs causing progress in the game," "receiving a signal comprising an unlock code," "determining a locked outcome of the game," "unlocking the locked outcome of the game using the unlock code, thereby determining an unlocked outcome," "determining an intra-game benefit associated with the unlocked outcome," and "providing the intra-game benefit to the user by incorporating the intra-game benefit into the game."

 As described above, providing an unlock code to reveal the benefit of a locked outcome

is akin to entering a drawing for a chance to win a prize.  Luring customers with a chance to win

a prize has long been a staple promotional tool, a "longstanding economic practice" to enable

promoters to entice customers to try a new product, visit a store, etc.  For example, in the 1960s,

grocery stores offered customers S&H Green Stamps which could be collected and redeemed for

prizes.  The specification of the '198 Patent itself discloses both a conventional lottery-like

implementation of concept where a player enters a drawing for a chance to win a prize, and a

non-lottery implementation where a player obtains locked outcomes and then obtains unlock

codes to determine the prizes contained in the locked outcomes.

Thus, the '198 Patent claims simply a "method of organizing human activity," a

disembodied economic strategy, which is nothing more than a patent-ineligible abstract idea.

*Alice*, 134 S. Ct. at 2356; *see also Planet Bingo, LLC v. VKGS, LLC,* No. 13-1663, 2014 U.S.

App. LEXIS 16412, at  *5 (Fed. Cir. Aug. 26, 2014) (non-precedential opinion) (finding claims

directed to "managing a game of Bingo" to be "similar to the kind of 'organizing human activity'

at issue in *Alice*").  Other courts have consistently found that claims to economic strategies are

drawn to abstract ideas.  In *DietGoal* (decided following *Alice*), the economic strategy of

calculating the nutritional impact of a meal and displaying the result visually was also a "long

prevalent" economic practice.  *DietGoal Innovations LLC v. Bravo Media LLC*, 13 Civ. 8391

(PAE), 2014 U.S. Dist. LEXIS 92484, at *31 (S.D.N.Y. July 8, 2014) (citing *Bilski*, 130 S. Ct. at

3231).  But even before *Alice*, the Supreme Court and Federal Circuit have repeatedly found

patents on economic strategies to be directed to abstract ideas.  The claims in *Bilski* implicated

the economic strategy of hedging risk in commodities markets and were found ineligible for that

reason. *Bilski*, 130 S. Ct. at 3231.  *Accenture* involved patents which improperly sought to claim

the strategy of generating tasks to perform to administer insurance.  *Accenture Global Servs. v.*

*Guidewire Software, Inc.*, 728 F.3d 1336, 1344-45 (Fed. Cir. 2013). In *DealerTrack*, the strategy of processing information using a clearinghouse was also an ineligible abstract idea. *DealerTrack,* 674 F.3d at 1333. So were methods for managing an insurance policy. *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1280 (Fed. Cir. 2012). The Federal Circuit reached the same conclusion with respect to a method for enabling tax-free exchanges of property to be used as an investment tool. *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1322 (Fed. Cir. 2012).

Here, the '198 Patent covers the economic strategy of conducting a promotion with an unlock code to reveal the benefit of a locked outcome, and is therefore directed to a disembodied economic strategy, which is a patent-ineligible abstract idea. The procedure of "determining a locked outcome of the game," "unlocking the locked outcome of the game using the unlock code, thereby determining an unlocked outcome," "determining an intra-game benefit associated with the unlocked outcome," and "providing the intra-game benefit to the user by incorporating the intra-game benefit into the game" is, on its face, a basic organizational and commercial idea.

The idea covered by the '198 Patent is at least as abstract as other economic strategy claims held to be outside the scope of patentable subject matter. For example, in *Alice*, the ineligible claim had much more particularized elements, such as "creating a shadow credit record," an "exchange institution," a "start-of-day balance," "transaction[s] resulting in an exchange obligation," and "time invariant obligations placed on the exchange institutions." *Alice*, 134 S. Ct. at 2352. In *Accenture* the ineligible claim included elements like "an insurance transaction database," "information related to the insurance transaction . . . in a structured format," "an assigned claim handler," and a "task engine [which] determines [the] tasks to be completed." *Accenture*, 728 F.3d at 1338. The *DealerTrack* claim included elements like a

14

"routing system . . . [containing] a central processor coupled to a communications medium," "display devices, remote credit bureau terminal devices, and remote funding source terminal devices," "credit application data," "credit report data," and "funding decision data," but was nonetheless ineligible.  *DealerTrack*, 674 F.3d at 1319.

Each of these claims is much more focused than the intangible economic idea claimed by the '198 Patent, which at its most specific, involves an "intra-game benefit."  Each of these was nonetheless directed to a patent-ineligible abstract idea.  The same is true of the '198 patent.

### 3.    The '198 Claim Elements Have No "Inventive Concept" Sufficient to "Transform" the Abstract Idea into a Patent-Eligible Application

*Alice* explains that, once the court decides that the claim is directed to an abstract idea, it must "determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 132 S. Ct. at 1294).  The Court in *Alice* provided some guidance on what categories of elements *do not* "transform" an abstract idea.  As an initial matter, the Court explained that "well-understood, routine, conventional" steps are not "inventive."  *Alice*, 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1294).  Additionally, *Alice* held that if the purported inventive quality of a patent claim is its implementation on a "generic" computer, the claim will still be drawn to ineligible subject matter under § 101.  *Alice*, 134 S. Ct. at 2358 ("the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention") (citing *Mayo*, 132 S. Ct. at 1294; *Bilski*, 130 S. Ct. at 3230).

Here, the purported invention recited by the claims of the '198 Patent does nothing more than implement the abstract idea described above on a generic mobile device.  As in *Alice*, such an implementation is not eligible for patent protection.  The specification leaves no doubt that the invention's purported advantages (i.e., its inventive qualities) – "reducing, or even eliminating in

some cases, the costs and other shortcomings associated with print based promotions" – stem

from its implementation on a computer.  Nowhere, however, does the specification disclose a

specific computer or application to carry out the abstract idea, instead disclosing the opposite – a

"user or customer device, such as a personal digital assistant, laptop computer, cellular

telephone, etc." 4:55-59.  The patent later refers to specific models of a user device, for

example: "Linda logs onto the WIN Network.com web site through her personal digital assistant

(e.g., a Palm Pilot VII™ handheld computer) which functions as a user device for Linda." 9:15-

18.  In emphasizing the advantages of  conducting the promotion electronically, the specification

describes no specific computer or application:

> An electronically conducted promotion may allow users to
> participate in and benefit from the promotion via a variety of
> electronic devices including, but not limited to, personal digital
> assistants, cellular telephones, kiosks, desktop or laptop computers,
> workstations, etc., thereby enabling geographically widespread
> user participation in the promotion while allowing for coding,
> encryption, and other electronically based techniques to minimize
> the potential and possibility of user or employee fraud, employee
> theft, etc., during the promotion.

10:18-28.

Thus, the various computing devices used to practice claims of the '198 Patent impose no

meaningful limitation on the process used to implement the claims.  As a result, the '198 Patent

does not "supply the necessary inventive concept; the process could be 'carried out in existing

computers long in use.'" *Alice*, 134 S. Ct. at 2357 (quoting *Gottschalk v. Benson*, 409 U.S. 63,

64 (1972)).  Instead, the claims cover all possible ways in a computer environment for providing

an unlock code to reveal the benefit of a locked outcome.  *See Accenture*, 728 F.3d at 1343

(patent ineligible even where claims included more specific computing elements and disclosed a

particular hardware configuration, because these elements were merely generic).

The claims are not saved by the fact that the specification describes "problems" arising

from non-computerized versions of promotional games and lotteries and explains that the patented invention addresses these deficiencies by making use of computing elements. '198 Patent at 1:34-2:9. The mere fact that a computer may improve the efficiency or effectiveness of a previous economic strategy is of no relevance to the § 101 analysis. *Alice*, 134 S. Ct. at 2358 (intermediated settlement performed on a computer enabling real time global transactions not eligible); *see also Walker Digital,* 2014 U.S. Dist. LEXIS 122448, at *21-22 ("Even accepting that the use of a computer increases the speed and efficiency of performing the steps of the claims, and improves the likelihood of preserving the anonymity of the first and second parties, these characteristics do not save the claims.") (citing *Alice*, 134 S. Ct. at 2358)[5]

Moreover, the dependent claims of the '198 Patent provide no inventive concept to the abstract idea disclosed by the independent claims, as they offer only "well-understood, routine, conventional" steps. As stated above, in addition to mere generic computer elements, the dependent claims only provide conventional elements, such as the mechanism for receiving the unlock code (claim 22) or the types of prizes that can be won (claim 27). Such functionality would naturally be expected in any lottery or promotional game.

In sum, the only "inventive concept" disclosed by the '198 Patent which might otherwise have been argued by Plaintiff before the *Alice* decision to "transform" its claim to an abstract idea into an eligible application of that idea (step two of the *Mayo* test) is its generic computerized nature— an element precisely eliminated by the Alice Court as "well-understood,

---

[5] *See also SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 Fed. Appx. 950, 954-55 (Fed. Cir. 2014) *cert. denied,* No. 13-1186 (Oct. 6, 2014) (computerized system to help doctors make treatment decisions not eligible even computerization allowed doctors to make use of far more information than they could have otherwise); *DietGoal*, 2014 U.S. Dist. LEXIS 92484, at *6 (claims enabling users to "view, in real time, the impact of food choices on customized eating goals" ineligible even though computerization much more efficient); *UbiComm*, 2013 U.S. Dist. LEXIS 161559, at *13 (generic reference to computerized "conditional action" not sufficient).

routine, conventional," and not "inventive" at all. *Alice*, 134 S. Ct. at 2359. This Court should similarly find that the '198 claims do nothing more "than simply instruct the practitioner to implement the abstract idea of intermediated settlement on a generic computer." *Id.* at 2357, 2359. Accordingly, all claims of the '198 Patent are directed toward patent-ineligible subject matter and are therefore invalid.

**B.      It Is Appropriate to Resolve Questions of Patent Eligibility on a Motion to Dismiss**

Courts, including those in this District in similar cases, can and regularly do grant motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the basis that an asserted patent is invalid under 35 U.S.C. § 101 for failure to claim patentable subject matter. Whether a claim recites patent-eligible subject matter can and should be assessed at the pleading stage. Report and Recommendation, *Genetic Techs.,* 2014 U.S. Dist. LEXIS 122780, at *6 n.2; *UbiComm,* 2013 U.S. Dist. LEXIS 161559, at *4 ("At the motion to dismiss stage a patent claim can be found directed towards patent ineligible subject matter"); *buySAFE,* 2014 U.S. App. LEXIS 16987, at *12 (affirming dismissal under Rule 12(c) under § 101).

*Alice* lends further support to the propriety of resolving matters of patent eligibility early. Although *Alice* arose from an appeal of a grant of summary judgment, the *Alice* Court resolved the question of patent eligibility with nothing more than examination of the claim language, as a whole. *Alice*, 134 S. Ct. at 2359. Decisions following *Alice* similarly decide the § 101 question without reference to a factual record. *See, e.g.*, *DigiTech*, 2014 U.S. App. LEXIS 13149, at *11-14; *DietGoal*, 2014 U.S. Dist. LEXIS 92484, at *30-45. For its part, the *Alice* Court made its determination in the absence of a claim construction by the district court, nor did it consider any factual record in deciding the § 101 question.

Finally, this also is not a case where claim construction is needed to decide the § 101

issue, nor could claim construction reveal an inventive concept that is not already present on the face of the claims. *See Bilski*, 130 S.Ct. at 3231 (invalidating patent under § 101 without the benefit of claim construction); *Bancorp*, 687 F.3d at 1273 ("we perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101"); *see also CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 715 (D. Del. 2012) (deciding § 101 issue before claim construction where plaintiff failed to explain how claim construction would alter the § 101 analysis); *DietGoal*, 2014 U.S. Dist. LEXIS 92484, at *48 (claim construction not required before addressing § 101; would not be a wise use of judicial resources to proceed through claim construction). Indeed, as set forth herein, the vast breadth of the claim language and the specification of the '198 Patent defeats any need for claim construction prior to deciding the present motion.

Even though a court may not "impor[t] limitations from the specification into the claim," *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc), Inventor Holdings may seek to save the '198 Patent by arguing that the specification somewhere contains an inventive concept not found in the language of the claims. *But see DealerTrack*, 674 F.3d at 1334 (only patent claims, and not specification, are relevant to § 101 analysis). Regardless of Inventor Holdings' preferred construction, it must at least arguably encompass Supercell's "Clash of Clans" game for the complaint to remain viable. That the "Clash of Clans" game—where players build defenses to protect their village and armies to attack other villages—is so far afield from the promotions and lottery games recited in the '198 Patent, demonstrates that the '198 Patent, if found valid would "effectively grant a monopoly over an abstract idea." *Alice*, 134 S. Ct. at 2354 (citing *Bilski*, 130 S. Ct. at 3231). Thus, claim construction is unnecessary to decide the § 101 issue because no construction could cure the pre-emption problems raised by the '198

Patent.  The "only plausible reading of the patent" is that it fails to recite patentable subject

matter.  *See UbiComm*, 2013 U.S. Dist. LEXIS 161559, at *20.

## V.  CONCLUSION

For the reasons stated herein, Supercell, Inc. requests that the Court dismiss this case with

prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon

which relief can be granted.

Respectfully submitted,

OF COUNSEL:                                  POTTER ANDERSON & CORROON LLP

Michael J. Sacksteder
Lauren E. Whittemore                         By:    */s/ David E. Moore*
Hana K. Andersen                                    Richard L. Horwitz (#2246)
FENWICK & WEST LLP                                  David E. Moore (#3983)
555 California Street                               Bindu A. Palapura (#5370)
San Francisco, CA  94104                            Hercules Plaza, 6th Floor
Tel:  (415) 875-2300                                1313 N. Market Street
                                                    Wilmington, DE  19801
Carolyn C. Chang                                    Tel:  (302) 984-6000
FENWICK & WEST LLP                                  rhorwitz@potteranderson.com
801 California Street                               dmoore@potteranderson.com
Mountain View, CA  94041                            bpalapura@potteranderson.com
Tel:  (650) 988-8500

Dated:  October 10, 2014                      *Attorneys for Defendant Supercell, Inc.*
1168697 / 41853

20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## <u>CERTIFICATE OF SERVICE</u>

I, David E. Moore, hereby certify that on October 10, 2014, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I hereby certify that on October 10, 2014, the attached document was electronically

mailed to the following person(s)

Stamatios Stamoulis
Richard C. Weinblatt
Stamoulis & Weinblatt LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE  19809
stamoulis@swdelaw.com
weinblatt@swdelaw.com

By:   /s/ David E. Moore
                Richard L. Horwitz
                David E. Moore
                Bindu A. Palapura
                Hercules Plaza, 6th Floor
                1313 N. Market Street
                Wilmington, DE 19801
                (302) 984-6000
                rhorwitz@potteranderson.com
                dmoore@potteranderson.com
                bpalapura@potteranderson.com

1165827 / 41853